IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| D'WAYNE BAILEY, | Cause No. CV 16-22-GF-BMM-JTJ |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| DOC Director Mike Batista, et. al., | |
| Defendants. | |

This matter comes before the Court on Plaintiff D'Wayne Bailey's Amended Complaint (Doc. 9), Second Amended Complaint (Doc. 13), Third Amended Complaint (Doc. 16), Fourth Amended Complaint (Doc. 20), and the corresponding supplements to these complaints. (Docs. 17, 19, and 21). Bailey alleges violations of the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Aside from a portion of Claim Three, alleging an Equal Protection violation, the remainder of Bailey's claims should be dismissed.

## I.    Background

Following his conviction in June of 2005, Bailey was sentenced to a forty-five year prison sentence. After serving a term of this incarceration within the Montana Department of Corrections, Bailey was transferred, via an interstate compact agreement, to the State of California. Bailey was transferred back to

1

Montana's custody on August 1, 2014.  (Doc. 2-1 at 4.)

Bailey initially filed a document with this Court which was construed as a 42 U.S.C. §1983 complaint.  The document consisted of a letter Bailey had written to the Toole County district court judge, requesting that the documents he had filed there be "transferred" to the federal court.  The letter was accompanied by 89-pages of exhibits.  *See* (Doc. 2, 2-1).  Within these exhibits were three separate state habeas petitions.  The first petition alleged racial discrimination within the Montana Department of Corrections' housing and Bailey asserted that his right to Equal Protection under the Fourteenth Amendment was being violated.  (Doc. 2-1 at 5-6.)  Bailey explained that as a result of this perceived discrimination, he was placed in a unit where he was unable to complete his court-ordered programs, which, in turn, was hampering his ability to become parole eligible.  (*Id*. at 6-7.) Bailey claimed a liberty interest in parole.  (*Id*. at 7.)

Bailey's second state habeas petition alleged a denial of medical care in violation of his Eighth Amendment.  (*Id*. at 50-54.)  Bailey asserted he has documented medical conditions, including a thick gallbladder wall, positive (ANA) rheumatoid factor, and Raynaud Syndrome.  Bailey claimed that providers at both the Montana State Prison (MSP) and Crossroad Correctional Associates (CCA) had failed to develop a treatment plan or employ the service of an outside specialist and in so doing, were disregarding Bailey's medical conditions and denying him

2

adequate health care. (*Id*. at 52-53.)

Bailey's third state petition alleged a denial of a basic level of sanitation and hygiene during his incarceration.  (*Id*. at 79-83.)  Further, Bailey asserted the indigent supplies, including hygiene supplies and legal materials were inadequate. Bailey claimed his right to humane conditions of confinement under the Eighth Amendment was being violated.  (*Id*. at 81.)

Bailey was advised that this Court would not consider petitions and documents filed in other courts.  He was also advised that the documents that had been filed failed to state a claim upon which relief could be granted.  He was directed to make all of the claims challenging his conditions of confinement in one document.  Bailey was provided with the Court's standard complaint form and given the opportunity to file an amended complaint.  (Doc. 3.)

Bailey then sent letters to the Court expressing confusion at the status of this matter and of a previously filed federal habeas petition.  (Doc. 6; 6-1.)  It was explained to Bailey that his habeas petition had been denied.  He was given an extension of time for the filing of his amended complaint.  (Doc. 7.)

**First Amended Complaint**

Bailey filed an amended complaint advancing a claim that his First, Fifth, and Fourteenth Amendment rights had been violated when the Interstate Compact

Coordinator, Linda Moodry,[1] destroyed and/or failed to have his property shipped back to Montana from California as outlined in MSP policy 4.7.6. (Doc. 9.) Bailey alleged Moodry's actions demonstrated a discriminatory intent which her supervisors condoned. (*Id*. at 5.) Bailey classifies the documents he no longer has as legal court documents, personal medical papers, institutional classification information, personal income taxes, and social security information. (*Id*. at 7.) Bailey seeks copies of all the missing documents.[2]

Bailey then sought additional time to file an amended complaint setting forth his additional claims in one document pursuant to this Court's directive. (Doc. 10.) Bailey was provided an opportunity to do so. (Doc. 12.) Bailey timely filed a second amended complaint.

### Second Amended Complaint

Bailey alleges violations of his First, Fifth, Eighth, and Fourteenth Amendment rights and raises four separate claims. Bailey also incorporated the property claim advanced in his First Amended Complaint into this document. (Doc. 13.)

Claim 1: As an indigent inmate, Bailey claims he is being denied adequate toiletries, including tooth paste, shaving supplies, soap, and razors. (*Id*. at 8-9.)

---

[1] Moodry apparently no longer works for the Montana Department of Corrections.

[2] This claim also coincides with the claim advanced in Bailey's first federal habeas petition which was denied. See, *Bailey v. Batista, et. al*., CV 16-24-GF-BMM-JTJ, Or. (D. Mont. April 19, 2016).

Bailey also contends the legal supplies he receives consisting of five stamped envelopes, ten sheets of lined paper, and thirty copies per month are insufficient. Bailey states that, as a result, he is being denied and deprived of his right to basic human needs and the right to adequate legal materials. (*Id*. at 5.)  Bailey also seems to allege that he has been denied access to the courts and discriminated against in prison employment. (*Id*.)

Claim 2: Bailey claims that the individuals at both MSP and CCA have disregarded his medical issues and complaints and by doing so, have demonstrated deliberate indifference in violation of the Eighth Amendment.  Bailey believes this lack of treatment has occurred due to an effort to cut costs within the prison system.  (*Id*. at 10.)  Bailey states that no action has been taken to treat his gallbladder, his ANA/rheumatoid arthritis, or his Raynaud Syndrome. (*Id*.)

Claim 3:  Bailey believes his right to due process is being violated due to the manner in which he is being housed.  Bailey explains that he was previously on single-cell status, but the designation was removed under the purported guise that it was necessary to do so in order for Bailey to be housed on the low-side of the prison.  (*Id*. at 12.)  Bailey continues to be housed with inmates with whom he does not get along.  Bailey contends this placement is racially motivated and indicative of the systemic racism he experiences in Montana.  (*Id*. at 13.)  As a result of his housing issues, Bailey still has not been able to complete his court-ordered

programs.  Bailey seeks to be placed on single-cell status in D Unit or A Unit at the Montana State Prison where he may complete his programming.  (*Id.* at 14.)

Claim 4: As set forth above, Bailey claims that he was unlawfully deprived of his property following his transfer back to Montana.  Bailey also believes Linda Moodry's actions in denying him his property were racially motivated, because a white inmate who was transferred to Montana at the same time as Bailey, was allowed to retain his property.  (*Id.* at 15.)  Bailey seeks compensation of $1,000 and to be provided with copies of all the documents that were destroyed.  (*Id.* at 16.)

### Third Amended Complaint

Bailey filed a subsequent amended complaint alleging violations of the First, Eighth, and Fourteenth Amendments, as well as a violation of RLUIPA.  (Doc. 16 at 1.)  In the third amended complaint, Bailey advanced two new claims.[3]

Claim 5: Bailey alleges that he has been denied his right to a special vegetarian diet and a properly balanced meal.  *Id.* at 5.  Bailey believes that the denial is based, in part, upon his criticism of the prison dietician and also upon a lie that a staff member told about observing Bailey accept meat on one occasion.  (*Id.* at 5-6.)  Bailey asserts he is a vegetarian for both health and religious reasons.  (*Id.* at 2.)  Bailey believes the denial is a disciplinary sanction.  (*Id.*)  Bailey requests

---

[3] For the sake of clarity, these claims will be referred to as Claim 5 and Claim 6.

that he receive a full vegetarian meal that meets dietary guidelines.

Claim 6: Bailey next alleges that medical personnel are denying him care and permitting unqualified nurses and nurse practitioners to make medical determinations concerning his health problems, in contravention of other specialists' recommendations, particularly relative to Bailey's knee problems and recommended knee braces.  Apparently, Bailey was approved for bilateral knee braces and a bottom tier and bunk when he was housed at CCA.  (Doc. 16-1 at 2, 5.)  Upon his return to MSP, however, he was approved not for the braces to which he was accustomed, but rather to elastic "knee sleeves."  (*Id*.)  Bailey requests that he receive his regular knee braces and a lower bunk and tier to accommodate his medical abnormality of tibial tubercle.  (Doc. 16 at 6.)

**Fourth Amended Complaint**

Bailey filed an additional complaint, reiterating the six claims outlined above.  Bailey also clarified Defendants who were to be added to each claim. (Doc. 20 at 5.)  As relief, Bailey requested this Court order:

> [The Montana] DOC to treat me medically out of my [California] medical file, that I [be] seen for knee and back problems by an orthopedic surgeon.  That I be given back my bilat knee braces for support, and my back braces.  That I be housed on a lower tier lower bunk on my single cell status again.  That I be seen by a rheumatologist, a vascular specialist for the circulation, Raynaud's Syndrome, that MT DOC knows I have. And that I actually be treated under chronic care for my documented medical problems.  And that the MT DOC employees treat me equally as it does other inmates and stop discriminating against me.

(*Id*. at 8.)

## II.     Screening Pursuant to 28 U.S.C. § 1915, 1915(A)

As Mr. Bailey is a prisoner proceeding in forma pauperis, the Court must screen

his Complaint under 28 U.S.C. § 1915 and 28 U.S.C. § 1915(A).  These statutes

require the Court to review a prisoner's complaint and dismiss it or portions there

of before it is served upon the defendants if the complaint is "frivolous," "fails to

state a claim upon which relief may be granted," or "seeks monetary relief from a

defendant who is immune."

Bailey's 42 U.S.C. § 1983 claims allege violations of his First, Fifth, Eighth,

and Fourteenth Amendment rights.  To state a claim under §1983, a plaintiff must

allege (1) the violation of a federal constitutional or statutory right; and (2) that the

violation was committed by a person acting under the color of state law.  *See West

v. Atkins*, 487 U.S. 42, 48 (1988); *Jones v. Williams*, 297 F. 3d 930, 934 (9th Cir.

2002).  Additionally, a plaintiff is required to allege a specific injury suffered, as

well as show a causal relationship between the defendant's conduct and the injury

suffered by the plaintiff.  *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976); *Johnson v.

Duffy*, 588 F. 2d 740, 743 (9th Cir. 1978).

An individual defendant is not liable on a civil rights claim unless the facts

establish the defendant's personal involvement in the constitutional deprivation or

a causal connection between the defendant's wrongful conduct and the alleged

constitutional deprivation.  *Hansen v. Black*, 885 F. 2d 642, 646 (9th Cir. 1989).

That is, plaintiff may not sue any official on the theory that the official is liable for

the unconstitutional conduct of his or her subordinates.  *Ashcroft v. Iqbal*, 556 U.S.

662, 679 (2009).  Bailey must identify the particular person or persons who

violated his rights.  He must also plead facts showing how that particular person

was involved in the alleged violation.   The Court will address each of Bailey's six

claims in turn.

III.   **Analysis**

Before dismissing claims in a pro se complaint, the litigant must be provided

with notice of the deficiencies in his complaint in order to ensure that the litigant

uses the opportunity to amend.  *Ferdik v. Bonzelet,* 963 F. 2d 1258, 1261 (9th Cir.

1992).  Dismissal of a pro se complaint without leave to amend is proper only if it

is absolutely clear that the deficiencies of the complaint could not be cured by

amendment.  *Welburg v. Shapiro*, 488 F. 3d 1202, 1205 (9th Cir. 2007).  As set

forth above, Bailey was provided with such notice of the deficiencies and did, in

fact, file several amendments to his original complaint.

While the majority of Bailey's claims should be dismissed, an answer is

required on a portion of one of his claims.  The Defendants shall respond to the

portion of Claim Three wherein Bailey alleges preferential treatment is being given

to white inmates relative to their placement in court ordered programs and

appearance before the Board of Pardons and Parole.

### 1. Claim One: Denial of Toiletries and Legal Materials

Bailey alleges his Eighth Amendment right to humane conditions of confinement has been violated. Bailey also seems to allege violations of his Fourteenth Amendment rights by denial of access to the courts and discrimination in prison employment. This claim should be dismissed in its entirety.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F. 3d 1041, 1045 (9th Cir. 2006). To show a violation of the Eighth Amendment, plaintiff must allege facts sufficient to support a claim that a prison official knew of and disregarded a substantial risk of serious harm to the plaintiff. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Frost v. Agnos*, 152 F. 3d 1124, 1128 (9th Cir. 1998). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillan*, 503 U.S. 1, 9 (1992). The Court must consider the "circumstances, nature, and duration of a deprivation of these necessities." *Johnson v. Lewis*, 217 F. 3d 726, 731 (9th Cir. 2000). Bailey does not have a constitutional right to a certain quantity of razors, soap, tooth paste or shaving supplies. Bailey also takes issue with the amount of legal supplies

10

indigent inmates are provided.

By his own admission, Bailey is provided the items allotted to indigent defendants each month.  While he may dispute the quantity of items in each allotment, Bailey does not claim that he has been completely denied these necessities.  Bailey was also informed by his unit manager that he lacked authority to change the policy concerning indigent supplies, but that he would make policy coordinator aware of Bailey's complaints.  (Doc. 2-1 at 87.)  Bailey was informed he was receiving the supplies in accordance with the policy, but that if something was missing, Bailey was to bring it to the Unit Manager's attention.  (*Id*.)  It also appears that at least on some occasions, Bailey received more photocopies than the policy provided for.  (*Id*. at 89.)  In short, Bailey fails to allege facts sufficient to state a plausible Eighth Amendment claim relative to his hygiene products or legal materials.

Prisoners have a constitutional right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  Prisoners also have a right "to litigate claims challenging their sentences or the conditions of their confinement to conclusion without active interference by prison officials."  *Silva v. DiVittorio*, 658 F. 3d 1090, 1103 (9th Cir. 2011).  An inmate alleging a violation of this right must show that he suffered an actual injury.  *Lewis v. Casey*, 518 U.S. 343, 349-51 (1996). That is, the plaintiff must allege that the deprivation actually injured his litigation

efforts, in that the defendant hindered his efforts to bring, or cause him to lose, an actionable claim challenging the conditions of his confinement. *Id.* at 351.

To the extent that Bailey is asserting a violation of the Fourteenth Amendment by prison officials not supplying him adequate legal materials and, in so doing, interfering with his access to the courts, Bailey has not demonstrated active interference. By his own allegation, Bailey concedes he is provided with the indigent allotment of supplies each month, including five stamped envelopes, paper, and thirty copies. (Doc. 13 at 8-9.) Moreover, he has not demonstrated an actual injury. To the contrary Bailey has demonstrated that he is more than capable of filing documents, which include the petitions and supplements filed in this matter, as well as his two companion habeas matters. Bailey also has been able to litigate his claims through the prison grievance system and the state courts, as evidenced by the voluminous exhibits provided to this Court.

Bailey also seems to advance a claim of racial discrimination, based on the fact that he has been unable to obtain a job, which would allow him to pay for items outside of those provided to indigent inmates. Racial discrimination in prisons is unconstitutional under the Fourteenth Amendment, expect for "the necessities of prison security and discipline." *Cruz v. Beto*, 405 U.S. 319, 321 (1972) (per curiam). While the Due Process Clause of the Fourteenth Amendment does not create a property or liberty interest in prison employment, racial

discrimination in the assignment of jobs violates equal protection. *Walker v. Gomez*, 370 F. 3d 969, 973 (9th Cir. 2004).

Bailey simply states that he has been turned down for jobs when he knows there are openings and that he has been unsuccessful in obtaining employment in jobs similar to those which he has previously held. (Doc. 13 at 9.) Yet, Bailey does not provide any specific examples of defendants discriminating against him, specific situations where he was treated unequally, or where race was employed as a factor to deny him employment. Bailey has not made a claim to establish that prison officials have discriminated against him in the employment context. This claim should be dismissed in its entirety.

## 2. Claim Two: Denial of Medical Care for Chronic Conditions

To prevail on an Eighth Amendment claim based upon the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Jett v. Penner*, 439 F. 3d 1091, 1096 (9th Cir. 2006). A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F. 3d at 1096. Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F. 2d 390, 394 (9th Cir. 1988).

To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847.

It is well established that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. *Jackson v. McIntosh,* 90 F. 3d 330, 332 (9th Cir. 1996). Additionally, "a plaintiff's showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference." *Wilhelm v. Rotman*, 680 F. 3d 1113, 1122 (9th Cir. 2012). Negligence does not amount to a violation of a federal constitutional right. *Farmer*, 511 U.S. at 837. ("[A] prison official cannot be found liable under the Eighth Amendment...unless the official knows of and disregards and excessive risk to inmate health or safety[.]"). Deliberate indifference describes a state of mind more blameworthy than negligence. *Id*. at 835.

Bailey alleges that he has been denied sufficient care for his thickened gall bladder, his ANA/rheumatoid arthritis, and his Raynaud's Syndrome. When Bailey was taken to treat his gallbladder he was told that "it was probably a cyst"

14

and that test results were within normal limits and unchanged, thus, no follow-up treatment was needed.  (Doc. 13 at 10.)   Bailey was scheduled to see a specialist for his ANA/rheumatoid factor while housed at CCA, but he did not.  (*Id*.; *see also* Doc. 20-1 at 21.)  Likewise, Bailey asserts his Raynaud Syndrome has been left untreated.  (*Id*. at 10-11.)

Bailey acknowledges that he is under what is termed "chronic care" but asserts that care consists of simply routine checks of his blood pressure.  (Doc. 2-1 at 52, 62.)  Bailey began grieving this issue as early as November 2014.  (*Id*. at 62.)  Bailey was seen by the doctor and evaluated on January 22, 2015.  At that time labs were drawn, a trial medication was started, a referral to an outside specialist was not deemed necessary, and Bailey was informed his case would be followed by medical staff.  (*Id*. at 58.) On May 7, 2015, his grievance was granted, in part, because Bailey had seen the prison physician.  Yet, he was informed that it was up to the provider to determine whether or not a specialist would be consulted.  (*Id*. at 55.)  He was also informed that the medical staff had developed a treatment plan to address his specific needs.  (*Id*.; *see also* Doc. 16-2 at 12, Doc. 2-1 at 57.) (response from C. Redfern informing Bailey that MSP physicians had full access to Bailey's California medical file, had reviewed the records to develop a treatment plan, and would continue to follow Bailey's case).

Bailey has failed to demonstrate that Defendants were deliberately

indifferent to his serious medical needs.   At most he has established that he

disagrees with "the need to pursue one course of treatment over another" which is

"[i]nsufficient, as a matter of law, to establish deliberate indifference." *Wilhelm*,

680 F. 3d at 1122.  The documents provided by Bailey show that he has been seen

by physicians and members of the medical staff, that a treatment plan has been

developed, and that he is under a chronic care plan.  The defendants have not been

deliberately indifferent.  To the extent that Bailey seeks treatment from a specialist,

he has no independent constitutional right to outside medical care supplemental or

additional to the medical care provided by the prison staff within the institution.

*See Roberts v. Spalding*, 783 F. 2d 867, 870 (9th Cir. 1986); *Estelle*, 429 U.S. at

103-04.  Bailey's claim should be dismissed.

### 3.  Claim Three: Housing Placement and Discrimination

The sentencing court ordered that before Bailey is eligible for parole, he

must: complete phases 1 and 2 of the prison sex offender treatment program, be in

compliance with phase 3 of the aftercare treatment, complete anger management,

and complete an extensive chemical dependency treatment program.  (Doc. 2-1 at

28.)  Bailey was informed that he would be transferred back to Montana from

California in order to have the opportunity to complete the programs prior to his

parole eligibility date of January 2016 but was also instructed that he would not

have a parole hearing until the Board had documentation that the requisite

programs were completed.  (*Id.*)

Bailey was previously on single cell status before his transfer to California. He contends MSP officials, specifically Robert Shaw, removed that designation under the purported guise that to be on the low-side, where Bailey's court-ordered programs are available, he needed to be removed from single cell status.  (Doc. 13 at 12.) Bailey explains he has still not been provided with the opportunity to complete his programs.  Bailey contends he continues to be housed with inmates with whom he does not get along and as a result he ends up in "the hole," i.e. - administrative segregation.  (*Id.* at 13.)  Bailey has explained that he believes his placement is racially motivated and indicative of the systemic racism he experiences in Montana.  (*Id.*)  Bailey requests that he be placed back on single cell status in D-Unit or A-Unit where his court ordered programs are available.

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.  *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be objectively, sufficiently serious, and (2) the prison official possesses a sufficiently culpable state of mind.  *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S.

17

294, 297-98 (1991)).

The Eighth Amendment protects against cruel and unusual punishment, but this does not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer de minimus injuries.  Furthermore, Mr. Bailey has no right to single cell placement, or even a placement of his choosing.  Bailey admits he has been incapable of getting along with various cell mates.  He has failed to set forth sufficient factual allegations to allege an objectively serious deprivation or that any named defendant possessed a sufficiently culpable state of mind.  Mr. Bailey does not state an Eighth Amendment claim with regard to placement in a single cell or in a particular place in the prison.

Bailey also advances Due Process and Equal Protection violations, claiming as a result of the discriminatory housing placement and program placement he has been denied the ability to complete court ordered programs.  (Doc. 2-1 at 6-7); (Doc. 13 at 12-13.) Bailey has made this same claim, with additional detail in a companion habeas case.  *Bailey v. Fender, et. al*, CV-16-84-H-DLC-JTJ, Pet. (filed Sept. 1, 2016).  Bailey alleges that although the Board of Pardons and Parole has refused to see him because he has not completed his court-ordered programs, it has seen similarly-situated white inmates. (*Id*. at 8.)  In support of his claim, Bailey explains that another inmate, William Hopkins, was given preferential placement in his treatment program by treatment provider Blair Hopkins.  *Bailey v. Fender,*

18

*et. al*, CV-16-84-H-DLC-JTJ, Ex. to Pet. at 5 (filed Sept. 1, 2016). Bailey also explains that white inmates are placed in groups before him and are seen by the Parole Board before they completed their court-ordered programming. *Id*. at 7.  As relief Bailey seeks to be placed on single-cell status, placed in the requisite programs, an appearance before the Board of Pardons and Parole, and ultimate transfer back to California. *Bailey v. Fender, et. al*, CV-16-84-H-DLC-JTJ, Pet. at 13 (filed Sept. 1, 2016).

Bailey's claim that he has been denied sexual offender treatment while in prison, does not implicate a protected interest.  Sexual offenders serving criminal sentences do not have a constitutional right to rehabilitative treatment.  *Balla v. Idaho State Bd. Of Corr.,* 869 F. 2d 461, 470 (9th Cir. 1989).  Bailey's additional due process claim, alleging denial of parole eligibility due to his inability to complete sex offender treatment does not implicate a protected interest.  Prisoners have "no constitutional or inherent right" to parole, *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), and within the statutory scheme of Montana under which Bailey was sentenced there was no created liberty interest protected by the Due Process Clause.  *Worden v. Mont. Bd. of Pardons & Parole*, 289 Mont. 459, 962 P. 2d 1157, 1165 (1998).  These portions of Bailey's claim should be dismissed.

Bailey also advances an equal protection claim alleging unequal treatment of

19

sexual offenders at the prison, specifically that white inmates have been given

preferential treatment in their program placement and appearance before the parole

board.  Because the preferential treatment as alleged in the claim is based upon a

suspect class, see, *City of Cleburn, Tex. V. Cleburn Living Ctr.*, 473 U.S. 432, 440

(1985), an answer from the Defendants is required.[4]

### 4.  Claim Four: Denial of Property

Bailey alleges that Linda Moodry violated his right to due process when,

upon his transfer back to Montana, she either had the California Department of

Corrections destroy his property or not ship it back.  To state a claim for violation

of the right to procedural due process, plaintiff must allege facts showing "(1) a

deprivation of a constitutionally protected liberty or property interest, and (2) a

denial of adequate procedural protections.  *Kildare v. Saenz*, 325 F. 3d 1078, 1085

(9th Cir. 2003).

While an authorized, intentional deprivation of property is actionable under

the Due Process Clause, neither a negligent nor intentional unauthorized

deprivation of property by a prison official is actionable if a meaningful post-

deprivation remedy is available for the loss.  *Hudson v. Palmer*, 468 U.S. 517, 533

(1984); *Quick v. Jones*, 754 F. 2d 1521 (9th Cir. 1984).  To the extent that Bailey

---

[4] Bailey lists Mike Batista, Montana Department of Corrections Director; Leroy Kirkegard, Montana State Prison Warden; and, Myron Beason, Montana State Prison Associate Warden, as the Defendants for Claim Three. Additionally, in his companion habeas case raising the same issue, Bailey identified Blair Hopkins and Sally Adden.

alleges his property was confiscated as a retaliatory act or as punishment, this would constitute an unauthorized deprivation and Due Process is satisfied if there is a meaningful post-deprivation remedy available. *Hudson*, 468 U.S. at 533.

The documents Bailey filed in his companion habeas case dealing with this claim, which he also references in his complaint, belie Bailey's claim. At the outset, Bailey also placed blame with the California Department of Corrections. *Bailey v. Batista, et. al*., CV 160240GF-BMM-JTJ, Ex. 1-6 to Pet. (filed March 23, 2016). According to Moodry, Bailey's property was not transferred as a result of Bailey's own actions by refusing to deal with his property and then becoming angry prior to his transfer and refusing to assist authorities. *Id*. at Ex. 1-11. Bailey grieved the issue and his grievances were denied. It was explained to Bailey that his property never arrived at MSP. Additionally, Bailey signed a form acknowledging what he would be allowed to bring and what he would have to mail or dispose of prior to the Montana transfer. *Bailey v. Batista, et. al*., CV 16-24-GF-BMM-JTJ, Ex. 1-2 to Pet. at 4-5 (filed March 23, 2016). Bailey's appeal of this issue was also denied. *Id*. at 1.

Yet, there was an additional remedy available to Bailey in this matter. He entered into a settlement agreement directly with Linda Moodry and was compensated for the lost property. *See Bailey v. Batista, et. al*., CV 16-24-GF-BMM-JTJ, Ex. 1-5 to Pet. (filed March 23, 2016). Moodry also provided

information to Bailey about his daughter, provided copies from the Montana Parole Board, contacted medical staff on Bailey's behalf, contacted California to try and locate the missing property, and provided Bailey with various legal reference materials, including state and federal habeas corpus manuals. *Id*. Additionally, Bailey was compensated $219.00 to replace his missing property. Bailey agreed to the settlement. Because Bailey had adequate post-deprivation remedies available due process is satisfied and Bailey has failed to state a cognizable claim. This claim, too, should be dismissed.

### 5. Claim Five: Denial of Vegetarian Meals

Bailey has claimed that his Equal Protection rights were violated when he was not been provided a vegetarian meal, while other similarly situated inmates had been. "The Equal Protection Clause requires the State to treat all similarly situated people equally." *Shakur v. Schriro*, 514 F. 3d 878, 891 (9th Cir. 2008). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendant acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F. 3d 1193, 1194 (9th Cir. 1998).

To analyze whether or not Bailey's right to equal protection was violated, the Court first must identify the relevant class to which Bailey belonged. *Thornton*

22

*v. City of St. Helens*, 425 F. 3d 1158, 1166 (9th Cir. 2005).  While Bailey claims he is vegetarian, in part, due to religious beliefs, he fails to identify his religion.  *See* (Doc. 16-2 at 2).[5]  Bailey also explains that he is vegetarian for health reasons and has apparently been since February of 2012.  (*Id*.)  The record reveals that Bailey was initially approved for vegetarian meals upon transfer to MSP.  Regardless of what his underlying motivation was for this dietary preference, Bailey belonged to the class of inmates that had been approved and received a vegetarian card. Apparently on February 10, 2015, a report was filed that a kitchen worker observed Bailey take and consume a beef steak.  (Doc. 16-2 at 14-15.)  In accordance with prison policy, he was then denied a vegetarian card.  Inmates are only given one opportunity to establish that they truly are vegetarian.  Once it is determined that an individual is not a vegetarian, the privilege is revoked.  (*Id*. at 14.)  Bailey disputed the allegation and an investigation was performed.  The finding of the investigation was that Bailey had violated the prison's vegetarian meal policy. This finding was affirmed by the Director of the Department of Corrections.  (*Id*. at 23.)

As observed by the prison dietician, Bailey was not treated differently, but rather was treated equally and in the same manner as any other inmate in his

---

[5] In his original grievances concerning the revocation of his vegetarian card, Bailey does not identify his religious beliefs as a basis for his vegetarian diet.  (Doc. 16-2 at 13, 15).  Additionally, in a request form dated January 25, 2014, in which Bailey offers criticism of the prison's vegetarian meals, he states he is vegetarian for medical reasons, but does not identify any religious belief.  *Id*. at 16.

position would have been in accordance with prison policy.  (*Id*. at 14-15.)  Upon Bailey's transfer back to MSP from CCA, the same policy was followed and Bailey was placed on the general menu versus the vegetarian plan.  (*Id*. at 17.)  Bailey presents nothing to establish that he was treated differently than any other inmate.  Thus, Bailey's equal protection claim fails.

Bailey also asserts that his First Amendment right to free exercise of religion is being violated.  In order to establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion, by preventing him from engaging in activities he sincerely believes are mandated by his faith, without any justification reasonably related to legitimate penological interests.  *Freeman v. Arpaio*, 125 F. 3d 732, 736 (9th Cir. 1997).  To reach the level of a constitutional violation, "the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference'" with the prisoners sincerely held religious beliefs.  *Freeman*, 125 F. 3d at 737.  As set forth above, Bailey does not identify his religion, nor does he show how the implementation of the prison policy denying him a vegetarian card, prevents him from engaging in activities mandated by his faith.  Whether Bailey agrees with the prison policy giving inmates one chance to demonstrate their vegetarianism is not the question this Court needs to consider.  Bailey has not shown a sincerely held religious belief or the lack of a reasonably related penological interest to the prison

24

policy providing inmates one opportunity to demonstrate they are vegetarians.

Bailey's First Amendment claim fails.

For these same reasons, Bailey's RLUIPA claim also fails.  The Religious

Land Use and Institutionalzed Persons Act provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U. S. C. § 2000cc-1(a).  Because Bailey has not explained what his religion is

and how the application of the prison's vegetarian policy substantially burdens his

exercise, he cannot proceed with this claim.  Claim Five should be dismissed in its

entirety.

### 6.  Claim Six: Denial of Medical Care/Accommodations for Knee

Bailey asserts that medical personnel are denying him care and permitting

unqualified nurses and nurse practitioners to make medical determinations in

contravention of other specialists' recommendations, particularly in relation to his

knee problems and knee braces.

Bailey first grieved this issue on November 19, 2014, following his transfer

back to Montana from California.  (Doc. 2-1 at 61.)  Bailey apparently saw medical

personnel on that date and was told that an MRI would not be performed and that

Bailey would not be taken to see an orthopedic specialist.  (*Id*.) Bailey requested

specialized treatment, that he be given a lower bunk on a lower tier, and that he be

provided with his knee braces.  (*Id*.)  It appears x-rays had been previously

performed in October of 2014 and at that time Bailey was scheduled for a follow-

up consultation. He was also advised that his California records relative to his

knees were obtained and reviewed.  Bailey saw Nurse Practitioner Henderson in

December of 2014 for his knees, as well as other issues.  (Doc. 2-1 at 57.)

Apparently, upon transfer back to MSP, Bailey's knee braces, back brace,

and socks were taken from him.  (*Id*. at 59.)  Bailey requested that the items be

returned.  The special needs committee reviewed Bailey's case and request and

determined that the items were not medically indicated at the time.  (*Id*. at 59, 63.)

Bailey continued to grieve the issue and the matter was referred to ADA

Coordinator for further review.  Bailey was informed that the Special Needs

Committee reviewed Bailey's request on two separate occasions and deemed them

not to be medical necessary.  (Doc. 16-1 at 7.)  Bailey was informed that he did not

meet MSP's criteria for lower tier or bottom bunk designation and that Montana

operated under a different system than California. (*Id*.)  Bailey was provided with

an accommodation from the ADA Coordinator, Russ Danaher, in which he was

allowed to purchase "knee sleeves."  (*Id*.)  Danaher explained this accommodation

was a good faith attempt to meet Bailey's medical needs and maintain MSP's high

26

standard of care within the limitations of a secure correctional setting.  (*Id*. at 8.)

When Bailey was transferred to CCA from MSP, it appears that he was provided the specific bilateral knee braces he desired and he was also approved for bottom bunk.  (Doc. 16-1 at 2, 5-6).  Upon his transfer back to MSP in November of 2016, Bailey submitted a request that he receive the knee braces, a lower tier designation, and a bottom bunk.  (Doc. 17-3 at 1.)  Bailey was evaluated by MSP medical and the renewed request was reviewed by the Special Needs Committee on November 29, 2016.  The request was denied and Bailey was informed he did not meet MSP's established criteria.  (Doc. 20-1 at 1.)

Bailey provides this Court medical records from events that occurred when he was in custody of the California Department of Corrections.  These include a 2008 consultation with and Orthopedic Surgeon (Doc. 20-1at 8); correspondence between Linda Moodry and Dr. Elizabeth Rantz, (*id*. at 9); a surgery report for a procedure performed in 1995 repairing an ACL tear, (*id*. at 10); a radiology report from 2011, (*id*. at 11); and an MRI report from 2009. (*Id*. at 12-13.)  It is also apparent that these records have been reviewed by medical providers at MSP.

While Bailey has certainly established that there is a difference in opinion between the medical staff at CCA, who provided Bailey with the braces and tier/bunk designation he requested, and the providers at MSP who have denied these same requests, that is all Bailey has established.  As explained in relation to

27

Claim Two, mere difference of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. *Jackson v. McInstosh*, 90 F. 3d 330, 332 (9th Cir. 1996). This claim should be dismissed.

## IV.    Conclusion

For the reasons set forth herein, the Court recommends that Claims 1, 2, 4, 5, and 6 should be dismissed for failure to state a claim. Additionally, the Court recommends that Defendants Mihelich, Redfern, Phipps, Pearson, Molnar, Moodry, Hunt, Danaher, Fode, Riddle, Hiner, Rantz, Kohut, Doe Defendants/MSP Medical Review Committee, and Decker be dismissed. Defendants Batista, Kirkegard, Beason, Hopkins, and Adden will be required to file a response to Mr. Bailey's Claim Three alleging an Equal Protection violation, specifically that preferential treatment is being given to white inmates relative to their placement in court ordered programs and appearance before the Board of Pardons and Parole.

Based upon the foregoing, the Court issues the following:

## ORDER

1. Pursuant to Fed. R. Civ. P. 4(d), the Court will request Defendants Batista, Kirkegard, Beason, Hopkins, and Adden to waive service of summons of Mr. Bailey's Complaint and Amended Complaints by executing, or having counsel execute, the Waiver of Service of Summons. The Waivers must be returned to the Court within **thirty (30) days of the entry date of this Order as reflected on the**

**Notice of Electronic Filing**.  If Defendants choose to return the Waiver of Service of Summons, their answer or appropriate motion will be due within 60 days of the entry date of this Order as reflect on the Notice of Electronic Filing, pursuant to Fed. R. Civ. P. 12(a)(1)(B).  See also 43 U.S.C. §1997e(g)(2).

2. The Clerk of Court shall forward the documents listed below to Legal Counsel for the Department of Corrections.

-Complaint (Doc. 2);
-Court's Order dated April 4, 2016 (Doc. 3);
-Amended Complaint (Doc. 9);
-Amended Complaint (Doc. 13);
-Amended Complaint (Doc. 16);
-Supplement (Doc. 17);
-Supplement (Doc. 19);
-Amended Complaint (Doc. 20);
-Supplement (Doc. 21);
-this Order;
-a Notice of Lawsuit & Request to Waive Service of Summons; and
-a Waiver of Service of Summons.

Counsel for Defendants must file a "Notice of Appearance" as a separate document at the time an Answer or Rule 12 motion is filed.  See D. Mont. L.R. 12.2.

3. Any party's request that the Court grant relief, make a ruling, or take an action of any kind must be made in the form of a motion, with an appropriate caption designating the name of the motion, served on all parties to the litigation pursuant to Federal Rules of Civil Procedure 7, 10, and 11.  If a party wishes to give the Court information, such information must be presented in the form of a

notice.  The Court will not consider requests made or information presented in letter form.

4.  Mr. Bailey shall not make any motion for default until at least seventy (70) days after the date of this Order.

5.  Pursuant to Local 26.1(d) "no party may begin discovery until a scheduling order has been issued."

6.  At all times during the pendency of this action, Mr. Bailey must immediately advise the Court and opposing counsel of any change of address and its effective date.  Failure to file a notice of change of address may result in the dismissal of the action for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

Further, the Court issues the following:

## RECOMMENDATIONS

1.  Claims 1, 2, 4, 5 and 6 should be DISMISSED.

2.  Defendants Mihelich, Redfern, Phipps, Pearson, Molnar, Moodry, Hunt, Danaher, Fode, Riddle, Hiner, Rantz, Kohut, Doe Defendants/MSP Medical Review Committee, and Decker should be DISMISSED.

3.  Claim 3 should be dismissed with the exception of the portion of that claim advancing an Equal Protection Violation.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Bailey may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[6]  28 U.S.C. §636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed. R. App. P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 26th day of May 2017.


  /s/ John Johnston
John Johnston
United States Magistrate Judge

---

[6] As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed. R. Civ. P. 6(d).  Therefore, three (3) days are added after the period would otherwise expire.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| D'WAYNE BAILEY | CV 16-22-GF-BMM-JTJ |
| Plaintiff, | |
| vs. | Rule 4 Notice of a Lawsuit and Request to Waive Service of Summons |
| DOC DIRECTOR Mike Batista, et al., | |
| Defendants. | |

TO:      Legal Counsel for the Montana
         Department of Corrections
         P.O. Box 201301
         Helena, MT  59620-1301

A lawsuit has been filed against you or individuals you may represent in this Court under the number shown above.  A copy of the Complaints (Docs. 9, 13, 16, and 20) are attached.

This is not a summons or an official notice from the court.  It is a request that, to avoid the cost of service by the U.S. Marshals Service, you waive formal service of a summons by signing and returning the enclosed waiver.  To avoid these expenses, you must file the signed waiver within 30 days from the date shown below, which is the date this notice was sent.

If you file the signed waiver, the action will then proceed as if Defendants were served on the date the waiver is filed, but no summons will be served on Defendants and Defendants will have 60 days from the date this notice is sent (see

1

the date below) to answer the complaint.

If you do not return the signed waiver within the time indicated, the Court

will order the U.S. Marshals Service to serve the summons and complaint on

Defendants and may impose the full costs of such service.

Please read the statement below about the duty to avoid unnecessary

expenses.

DATED this 26th day of May, 2017.


 /s/ John Johnston
John Johnston
United States Magistrate Judge

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does not include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| D'WAYNE BAILEY, | CV 16-22-GF-BMM-JTJ |
| Plaintiff, | |
| | |
| vs. | Rule 4 Waiver of the Service of Summons |
| | |
| DOC Director Mike Batista, et al., | |
| Defendants. | |

TO:   The U.S. District Court for the District of Montana

The following Defendants have received the Court's request to waive service of a summons in this action along with a copy of the complaints, and two copies of this waiver form.

Defendants agree to save the expense of serving a summons and complaint in this case.

Defendants understand that they will keep all defenses or objections to the lawsuit, the Court's jurisdiction, and the venue of the action, but that they waive any objections to the absence of a summons or of service.

Defendants also understand that they must file and serve an answer or a motion under Rule 12 within 60 days from, the date when

1

this request was sent.  If Defendants fail to do so, a default judgment

will be entered against them.

_____;

_____;

_____;

_____;

_____;

_____;

_____;

_____;

_____;

_____;

_____;

_____;

_____;

_____;

Date: _____

_____
(Signature of the attorney
or unrepresented party)


_____
(Printed name)

2

_____
(Address)

_____
(E-mail address)

_____
(Telephone number)