RECEIVED

FEB 2 1 2019

Clerk, U.S. Courts
District of Montana
Missoula Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| D'WAYNE BAILEY, | Cause No. CV 16-22-GF-BMM-JTJ |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| DOC Director Mike Batista, et. al., | |
| Defendants. | |

This matter comes before the Court on Defendants' Motion for Summary Judgment and Brief in Support (Docs. 43 & 44), and Plaintiff D'Wayne Bailey's Motion for Copies/Review (Doc. 41), Motion for Injunction (Doc. 50), and Motion for Production (Doc. 53.)

Bailey originally filed an Amended Complaint, Second Amended Complaint, Third Amended Complaint, Fourth Amended Complaint, as well as supplements to these complaints, in which he advanced various constitutional claims. See, (Docs. 9, 13, 16, 17, 19, 20, and 21.) Pursuant to the screening process mandated by 28 U.S.C. §§1915, 1915A, the Court dismissed of all of Bailey's claims, except a portion of Bailey's Equal Protection claim, in which he asserted his rights were violated by purportedly discriminatory practices at the Montana State Prison, which resulted in white inmates receiving preferential

1

treatment in prison program placement and in their appearances before the Parole

Board.  See, (Doc. 24 at 19-20). See also, (Doc. 31.)  All Defendants were

dismissed, except Batista, Kirkegard, Beeson, Hopkins, and Odden.

In response to Bailey's surviving claim, the Defendants moved for summary

judgment alleging no genuine issue of material of fact exists and requesting

Bailey's complaint be dismissed with prejudice.  See generally, (Doc. 44.)  Bailey

timely responded.  (Doc. 47.)

All pending motions will be addressed herein.

I.      **Motion for Copies/Motion for Review**

Bailey's motion seems to request a copy of everything that has been filed in

this matter, as well as an order directing the State of Montana to provide him with

various documents from state court proceedings.  See generally, (Doc. 41.)  But, as

Bailey himself acknowledges, the Clerk of Court provided a copy of the docket

sheet in the present matter and advised Bailey if he wanted copies of specific

documents, he was to inform the Court which items he sought and the Clerk would

advise him of the cost of furnishing the documents.  *Id.* at 1.  Bailey has not

complied with this procedure, but rather continues to make requests for a

voluminous number of documents.  To the extent that this motion is construed as a

request for copies, the request will be denied.

Bailey also inquires whether he may move this Court to sanction the

Montana state courts and/or review decisions that have been made in his state court proceedings. *Id.* at 2-3. This Court is unable to provide Bailey the relief sought. Federal district courts, as courts of original jurisdiction, do not serve as appellate tribunals to review errors allegedly committed by state courts. *MacKay v. Pfeil*, 827 F. 2d 540, 543 (9th Cir. 1987); see also, *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 296 (1970) ("lower federal courts possess no power whatever to sit in direct review of state court decisions"). It would be entirely inappropriate for this Court to review the state court rulings as suggested by Bailey. To the extent that the motion is construed as a Motion for Review, the motion, likewise, will be denied.

## II.    Motion for Injunction

Bailey also seeks an order from this Court directing the Montana Department of Corrections to place him on single-cell status. (Doc. 50.) Bailey raises several issues that he has already presented to this court including: denial of property, housing placement, and he explains various hardships he has endured while incarcerated in both Montana and California. *Id.* at 2-6. Attached to Bailey's motion are several documents including a special mailing request; Disciplinary Investigative Notes from April of 2015; correspondence of June 8, 2015, from the MSP Grievance Coordinator regarding Bailey's incompatibility issues with other inmates; and, an April 2015 denial of Bailey's grievance

3

contesting the denial of his request for copies of his main file and his medical file. See, (Doc. 50-1 at 1-4.)

But, as the State points out, this Court has already dismissed these same claims. See, (Doc. 24 at 17-18.) Because the Court has already advised Bailey that he has no right to placement of his choosing, including designation on single-cell status, Bailey's renewed request lacks merit. The Motion for Injunction will be denied.

### III.   Motion for Production

Bailey also asks this Court to issue an order, pursuant to Fed. Rule. Civ. Pro. 34, and Montana state law, requiring the dissemination of various documents. Specifically, Bailey requests: records from the Montana Board of Pardons and Parole, including correspondence between two of its directors; all documentation concerning Bailey's program/group placement; records from the Nineteenth Judicial District Court, including court orders removing the requirement that Bailey complete anger management and denying Bailey's 2006 motion to withdraw his guilty plea; a copy of all MSP treatment records; a copy of all written statements concerning Bailey; a copy of all the OSR's Bailey sent to Blair Hopkins and/or the MSP treatment unit; all medical information on file; a copy of Bailey's 2017 polygraph results; and, a complete copy of his entire medical file from the California Department of Corrections. (Doc. 53 at 1-3.) Bailey has also filed

supplements to his request, outlining his custodial history and difficulties, including the perceived racism and discrimination he has experienced within the Montana Department of Corrections. (Docs. 54, 56, and 57.)  Bailey has previously expressed these concerns in this case, as well as in his companion habeas cases.[1]

Rule 34 allows a party to request another party to produce, among other things, documents, electronically stored information, and other tangible things. It limits the production request, however, to items in the responding party's possession, custody, or control.  Fed. R. Civ. Pro. 34(a)(1).  Annette Carter and Montana DOC Director Reginald Michael are not parties to this action.  To the extent that Bailey is seeking production of any documents from these individuals, the request is denied.

Bailey has previously been informed that he is not to file discovery requests and/or responses with the Court.  See e.g., (Doc. 42 at 2) (wherein Bailey acknowledges the Court returned documents to him and advised the documents needed to be sent to the Defendants); see also, Local Rule 26.2(a) (documents produced in discovery and discovery requests are not to be filed with the Court

---

[1] See e.g., *Bailey v. Batista*, CV-16-24-GF-BMM-JTJ, Pet. (filed March 23, 2016) (habeas matter challenging the purportedly unlawful deprivation of property); *Bailey v. Fender*, CV-16-84-H-DLC-JTJ, Pet. (filed Sept. 1, 2016)(habeas petition alleging due process violation based upon denial of program placement and release on parole).

5

unless they are relied upon as an exhibit to a motion). Additionally, to the extent that Bailey's filing constitutes a discovery request, it is untimely.  See, (Doc. 34 at 8, ¶¶3-4) (requiring discovery requests to be served by September 3, 2018, and discovery completion by October 1, 2018).

Federal Rule of Civil Procedure 37 states that a party can "move for an order compelling disclosure or discovery," but the Rule also provides that the movant must certify that he has in "good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1); see also D. Mont. L.R. 26.3(c). Defendants state that Bailey has not complied with these provisions.  (Doc. 55 at 2.)  In response, Bailey provides various documents indicating that he has requested items from different individuals and entities over the years.[2]  But, Bailey's quest to seek information from various sources does not demonstrate that he complied with the discovery procedures outlined in this Court's scheduling order.  See, (Doc. 34 at 5-9.)

Additionally, while Rule 37 does not provide a time limit for filing a motion to compel, generally a motion to compel should be filed prior to the discovery cut-off, although courts have discretion to hear a motion to compel after the discovery

---

[2] Bailey indicates he sought medical records in 2014 and 2015, (Doc. 56-1 at 2, 4); court records in 2017, *id.* at 3; and records from the parole bard in 2016 and 2018. *Id.* at 5-8.

period has ended. See e.g., *Garrett v. City and County of San Francisco*, 818 F. 2d 1515, 1518 (9th Cir. 1985). As set forth above, this motion to compel has been made several months after the close of discovery. Further, Bailey has not made clear what information he seeks and how it would preclude summary judgment, *id.* at 1518-19, to the contrary, he has made a sweeping request for additional discovery. Bailey's Motion for Production is denied.

## IV.   Motion for Summary Judgment

Having considered the parties' arguments and submissions, the Court finds, as explained below, that Defendants' motion for summary judgment should be granted.

### A. Standard

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *City of Pomona v. SQM North America Corp.*, 750 F. 3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F. 3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (*citing Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

"Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine

issues for trial." *Oracle Corp.*, 627 F.3d at 387. "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1). But "[a] plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F. 3d at 1049. It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight*

9

*Lines*, 810 F.2d 898, 902 (9th Cir. 1987). "Where the record taken as a whole could not lead a rational there of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Matsuishita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

By notice provided November 1, 2018 (Doc. 46), Bailey was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## B. Background

In 2005, following a guilty plea to Sexual Intercourse without Consent, in Montana's Nineteenth Judicial District, Lincoln County, Bailey was sentenced to a forty-five year prison sentence. The district court imposed certain parole restrictions upon Bailey which required that before he be considered for parole, he must complete Phases 1 and 2 of the prison Sex Offender Treatment Program ("SOP") and be compliant with Phase 3 of the aftercare treatment. (Doc. 45-2 at 9, ¶ 3.)[3] Phase 1 of treatment is an educational phase that lasts approximately 16

---

[3] The district court also imposed a requirement that Bailey complete an extensive chemical dependency treatment program, a condition Bailey challenged in a state habeas corpus petition and that Bailey references throughout his filings in these proceedings. The Montana Supreme Court denied Bailey's petition challenging the chemical dependency treatment requirement. See, *Bailey v. Salmonsen*, OP 18-0088, Or. at 1-2 (Mont. May 1, 2018).
All state court briefing and orders available at: https://supremecourtdocket.mt.gov/ (accessed February 19, 2019).

weeks, while Phase 2 is a cognitive and behavioral program for offenders that have

completed Phase 1 and generally takes between 15 to 24 months to complete.   See,

Aff. Hopkins (Doc. 45-2 at 2-3, ¶¶ 7; 10.)  After an inmate completes Phase 2, he

is required to enter and participate in Phase 3 aftercare until he is discharged from

his custodial sentence.  *Id.* at 4, ¶16.

   After serving a portion of his sentence in Montana, Bailey was transferred to

California, pursuant to an Interstate Compact Agreement.  In October 2013, Bailey

was advised that he would not be able to appear before the Parole Board until he

complied with the court-ordered conditions of his sentence and that it appeared

some of the required programs may not be available in California.  (Doc. 2-1 at

28.)  Bailey was informed he would be provided the opportunity to return to

Montana to complete the programs, but that it was his choice whether or not to

complete the treatment programs and, thus, become parole eligible.  *Id.* at 28-29.

In October of 2013, Bailey indicated he intended to return to Montana and

complete SOP.  See, (Doc. 47-1 at 15) ("I've expressed verbally to two CA

correctional counselors that I wish to return to MT to complete the court ordered

program").  In August of 2014, Bailey returned to Montana.  Bailey began Phase 1

of SOP on October 30, 2014; he completed Phase 1 on March 5, 2015.  (Doc. 45-2

at 2, ¶¶8-9); see also, *Id.* at 11-12.  On March 5, 2015, Bailey signed up for Phase 2

outpatient treatment.[4]  *Id.* at 4, ¶17.

In February of 2016, the Board of Pardons and Parole informed Bailey that although he had served the minimum time necessary to be considered for parole, he was ineligible for parole and must complete both Phase 1 and 2 of SOP and be compliant with Phase 3 prior to his release consideration. See, (Doc. 25-2 at 1).[5]

On October 24, 2016, Defendants assert Bailey refused placement in SOP Phase 2. (Doc. 45-2 at 4, ¶18.)[6]  Bailey re-applied for Phase 2 on November 22, 2016 and started the program the following day.  *Id.* at ¶¶18-19.  In January of 2018, Bailey failed Phase 2 and was involuntarily removed from the program.  *Id.* at ¶ 21.  Bailey has not reapplied for the program but has been advised that he may do so.  *Id.*; see also, (Doc. 47-1 at 6.)

Bailey generally alleges that white inmates are given preferential treatment in violation the Equal Protection clause of the Fourteenth Amendment.  In support of the first portion of his claim, Bailey alleges that the SOP program director, Blair Hopkins, placed a white inmate, William Hopkins,[7] in Phase 2 of SOP, even though he had a later parole eligibility date than Bailey.  See, (Doc. 25 at 7-8);

---

[4] As discussed more fully below, there are two tracks available for Phase 2 SOP: outpatient treatment and intensive inpatient treatment.

[5] See also, Montana Board of Pardons and Parole February 2016 Dispositions.  Available at: https://bopp.mt.gov/Dispositions (accessed February 12, 2019).  See also, (Doc. 56-1 at 5)(letter from Christine Slaughter, Parole Board Analyst).

[6] Although Bailey provides no additional information, he objects to this contention.  See, (Doc. 48 at 1.)

[7] Blair Hopkins and William Hopkins are not related.

(Doc. 25-1 at 5.)  Bailey also alleges that a white inmate, Anthel Brown. was allowed to appear before the Parole Board, despite having not yet met his parole eligibility requirements, while Bailey has been denied a similar appearance.  (Doc. 25 at 7-8); (Doc. 25-1 at 6.)

### C. Analysis

As explained below, Bailey has not demonstrated that he was treated differently because of his membership in a protected class or established that he was treated differently from similarly situated individuals without a rational relationship to a legitimate state purpose.  Moreover, the remaining defendants are all entitled to qualified immunity.  The motion for summary judgment should be granted.

### i.    Equal Protection Violation

The Equal Protection clause of the Fourteenth Amendment "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  Prisoners are protected under the Equal Protection Clause from invidious discrimination based on race. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  An equal protection claim may be established by showing that a defendant intentionally discriminated against a plaintiff based on his membership in a protected class. *Hartmann v. Calif. Dep't of Corrs. and Rehab*, 707 F. 3d 1114,

1123 (9th Cir. 2013). It may also be established by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Enquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 601-02 (2008).

To avoid summary judgment on a claim of racial discrimination, the plaintiff must "produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that [the challenged action] was racially motivated." *Bingham v. City of Manhattan Beach*, 341 F. 3d 939, 948-49. In the prison context, the right to equal protection is "judged by a standard of reasonableness- specifically, whether the actions of prison officials are 'reasonably related to legitimate penological interests.'" *Walker v. Gomez*, 370 F. 3d 969, 974 (9th Cir. 2004)(quotations omitted).

### a. Sexual Offender Programming

In response to Bailey's claim that William Hopkins received preferential program placement, the Defendants have supplied additional information that defeats Bailey's claim and entitles them to summary judgment.

At the Montana State Prison, there are two separate tracks for completing Phase 2 of SOP: intensive inpatient treatment and outpatient treatment. See, Aff. Hopkins (Doc. 45-2 at 3, ¶11.)[8] In the intensive inpatient treatment program, the

---

[8] There also appears to be a Phase 2- Special Needs group for individuals that have impairments-

14

inmate lives in a unit that houses only sex-offenders, thus the participants have

contact 24-hours a day. *Id.* at ¶ 12.[9]  Inmates attending outpatient treatment

continue living in their assigned housing unit with a variety of offenders and attend

one two-hour meeting each week. *Id.* at ¶13.  The waiting list for Phase 2 intensive

inpatient treatment is much shorter than that for Phase 2 outpatient. *Id.* at ¶14.

William Hopkins enrolled in intensive inpatient treatment, *id.* at 5, ¶23, while

Bailey enrolled in outpatient treatment. *Id.* at 4, ¶¶17-18.

     In his response to the motion for summary judgment, Bailey does not

directly address the fact that he and William Hopkins were in different programs.[10]

Rather, Bailey indicates in his statement of disputed facts that he was not aware he

could sign up for Phase 2 Intensive treatment and that it was his belief that group

---

such as illiteracy, head injuries, mental illness, and comprehension difficulties- that hinder them
from progressing with their treatment. See, (Doc. 45-2 at 7.)

[9] This program is also referred to as the Intensive Treatment Unit (ITU).  The group meetings are
two hours in length and are conducted two times each week. See, (Doc. 45-2 at 6.)

[10] Bailey now argues he should have been provided special accommodations while in Phase 2
due to a learning disability and prior head injury that made completing the lessons difficult.
(Doc. 47 at 5.)  Although Bailey indicates he attempted to seek help and make his difficulties
known, he claims Blair Hopkins simply advised him to stay focused on the group.  (Doc. 48 at
2.)  But, Bailey also indicates did not get along with the Phase 2 treatment provider, Drew
Shoening. See e.g., (Doc. 48 at 2,3), see also, (Doc. 47 at 7); (Doc. 47-1 at 7,8, 29-30.) (Bailey
repeatedly refers to Shoening as "a clown").  Bailey seems to claim he was expelled from Phase
2 as retaliation by Shoening due to Bailey's constant complaints.  (Doc. 48 at 3) (Doc. 47-1 at
29-30.)  But, Blair Hopkins states Bailey was terminated from Phase 2 only after being provided
with "multiple warnings regarding treatment productivity and accountability."  (Doc. 45-2 at 4, ¶
21.)  Regardless, this ancillary argument is not pertinent to Bailey's Equal Protection claim
regarding white inmates being given preferential placement in SOP.

was only available to offenders who had a child victim.  (Doc. 48 at 1.)

In relation to this portion of the claim, Defendants are entitled to summary judgment.  Upon review of the additional information, Bailey's claim does not make a threshold showing establishing unequal treatment of similarly situated persons.  See *City of Cleburne*, 473 U.S. at 439.  As the Defendants have demonstrated, Hopkins and Bailey were not similarly situated, because they enrolled in two different Phase 2 treatment programs.  While Hopkins may have entered Phase 2 before Bailey did, he was enrolled in the intensive treatment program with a shorter waiting list, whereas Bailey enrolled in the outpatient treatment program.  Moreover, given the distinct programming tracks that the two men undertook, there is no indication that the placement of either was in any way motivated by the fact that William Hopkins is white and Bailey is black.

The Court concludes that there exists no genuine issue of material fact with respect to this portion of Bailey's Equal Protection claim.  See, *Celotex Corp.*, 477 U.S. at 323.  In response, Bailey has failed to point to specific facts showing that there is a genuine issue for trial, *id.* at 324, or identify with reasonable particularity the evidence that precludes summary judgment.  Accordingly, the Court will recommend summary judgment be granted in favor of the Defendants as a matter of law on this claim.  *Id.* at 323.

### b. Appearance before the Parole Board

The Defendants argue that they are entitled to summary judgment relative to Bailey's parole hearing claim, because the Parole Board is a quasi-judicial body, of which none of the named defendants are members and over which they have neither power nor control. See, (Doc. 44 at 21-22.)  Under Montana law, the Parole Board operates independently and without approval or control of the Montana Department of Corrections. *Id.* at 22.[11]  Thus, the Parole Board exercises its judgment and discretion in its internal functions, including determining when to grant or deny "privileges, right, or benefits" and when to "holding hearings." *Id.*[12] Defendants explain that one of the quasi-judicial functions was exercised by the Board, when it advised Bailey he was not eligible for parole consideration until he had met the court ordered treatment conditions, discussed above. *Id.* at 22-23.[13]

Bailey has also argued that a white individual, Anthel Brown, was afforded a parole hearing, even though he had not completed SOP treatment and, thus, was not parole eligible.[14]  The Defendants argue that Bailey's reliance upon a single

---

[11] The Defendants cite to Mont. Code Ann. §§2-15-2302(a), as authority for the quasi-judicial nature of the Parole Board; it is apparently allocated to the DOC for administrative purposes only.

[12] Citing, Mont. Code Ann. §2-15-102(10)(b)(e)(j) and (k).

[13] See also, *supra*, at 11-12.

[14] Anthel Brown was part of a lawsuit brought by sixty-five inmates challenging their placement in various institutions within the Montana Department of Corrections. See, *Quigg v. Slaughter*, 2007 MT 76, 336 Mont. 474, 154 P. 3d 1217.  Brown sought injunctive relief and argued that the DOC should be directed to transfer him back to low-side custody at the Montana State Prison in order for him to complete SOP and, in turn, become parole eligible. *Quigg*, at ¶ 42.  Brown

parole hearing that occurred more than a decade ago, is insufficient to establish

discriminatory intent. (Doc. 44 at 25.) Moreover, the Defendants point out that it

is a distinction without a difference: Brown was advised at a hearing that he was

ineligible for parole because he had not met the treatment conditions, whereas

Bailey was advised in a letter. Were Bailey to have a hearing, he, like Brown,

would be denied parole because he still has not met the conditions precedent to his

parole eligibility. *Id.*

As a preliminary matter, this Court would observe that Anthel Brown, who

was convicted of Deliberate Homicide in 1976,[15] has a liberty interest in parole,

while Bailey, who was sentenced in 2005, does not. See. e.g., *Worden v. Mont. Bd.*

*of Pardons & Parole*, 962 P. 2d 1157, 1165 (Mont. 1998)(holding that when the

Legislature amended the statute in 1989, it eliminated any liberty interest in

parole).[16] Thus, in terms of the process due to each in the parole context, Bailey

and Brown do not appear to be similarly situated.

But Bailey did not respond to any of the arguments advanced by Defendants.

---

argued that failure to make such provisions violated his right to due process. *Id.* at ¶43. But, the Court noted that although Brown had a liberty interest in parole, he had an opportunity to be heard at his January 2003 parole hearing and was advised of why the Board denied his release. Furthermore, he was on the waiting list for SOP and the DOC had done nothing to impede his parole opportunities. Thus, no due process violation occurred. *Id.* at ¶¶46-47.

[15] See, Montana Correctional Offender Network: https://app.mt.gov/conweb/Offender/11599 (accessed February 19, 2019).

[16] See also, Mont. Code Ann. §46-23-201(1) (2005) (providing the parole board *may* release a prisoner on parole when certain criteria are met)(emphasis added).

18

See generally, (Doc. 47.)   Thus, Bailey has failed to demonstrate that any of the named defendants played any role or influenced the Parole Board in making its decision not to conduct a parole hearing, but instead advised Bailey of his parole ineligibility in a letter.  Moreover, Bailey has failed to point to facts that would tend to demonstrate Brown's 2003 appearance before the Parole Board and Bailey's failure to appear before the Parole Board in January of 2016, was racially motivated.  Bailey has provided the Court with no evidence that could support a jury verdict in his favor. *Celotex*, 477 U.S. at 323.  Or, to put it another way, because there is no genuine issue of material fact, this portion of Bailey's Equal Protection claim should also be resolved, as a matter of law, in the Defendants' favor.

### ii.    Qualified Immunity

The Defendants assert that they are entitled to summary judgment based upon the doctrine of qualified immunity.  Qualified immunity shields public officials "from liability for civil damages insofar as their conduct does not violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To overcome qualified immunity, Bailey must show, "first, [that he] suffered a deprivation of a constitutional or statutory right; and second [that such] right was clearly established at the time of the alleged misconduct." *Taylor v. Barker*, __ U.S. __,

135 S. Ct. 2042, 2044 (2015)(per curiam)(internal quotation marks omitted).  This

Court has discretion to consider the two factors in reverse order.  *Pearson v.*

*Callahan*, 555 U.S. 223, 226 (2009).

All remaining defendants have asserted they are entitled to qualified immunity,

because Bailey has not demonstrated any Defendant personally violated his

constitutional rights.  The Court agrees.

### a. Batista, Kirkegard, and Beeson

Mike Batista is the former Director of the Montana Department of

Corrections, Leroy Kirkegard is the former Warden of the Montana State Prison,

and Myron Beeson is the former Associate Warden of Housing of the Montana

State Prison.  Bailey seems to assert that these individuals supervised others who,

in turn, violated Bailey's rights by following a custom and/or policy in place at the

Montana State Prison.  Bailey contends the result of such custom allowed others to

"drag out" his placement in group treatment and in the amount of time it takes for

one to complete SOP.  See e.g., (Doc. 45-1 at 28-29).

"A defendant may be held liable as a supervisor under § 1983 'if there exists

either (1) his or her personal involvement in the constitutional deprivation, or (2) a

sufficient causal connection between the supervisor's wrongful conduct and the

constitutional violation.'"  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)

(*quoting Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).  "The requisite

causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207-08 (internal citations, quotation marks, and alterations omitted); *see also Lacey v. Maricopa Cty.*, 693 F.3d 896, 915 (9th Cir. 2012) (explaining that claim brought under 42 U.S.C. § 1983 has a causation requirement with liability extending to those state officials who subject, or cause to be subjected, an individual to a deprivation of his federal rights).

To the extent that Bailey asserts a claim against Myron Beeson, Beeson was only involved in Bailey's housing related claims. As discussed above, those claims have been dismissed,[17] thus, there is no surviving claim against Beeson and he is entitled to qualified immunity.

Bailey has presented no evidence that either Batista or Kirkegard were aware of any procedures in place involving SOP treatment placement.[18] But, as discussed above, Bailey has not established that his right to Equal Protection was violated in relation to his placement in SOP. Given Bailey's failure to establish the violation of a constitutional right, Bailey likewise has not demonstrated a corresponding

---

[17] See, *supra*, at 4; see also, (Doc. 24 at 17-18.)
[18] Additionally, it is undisputed that Bailey has not completed SOP Phase 2. Bailey was discharged from program and has not re-applied. The Court fails to see how Batista or Kirkegard's acts could be tied to Bailey's non-compliance with the program. See e.g., Aff. of Hopkins (Doc. 45-2 at 4, ¶ 21.)

causal connection between Defendants Batista and Kirkegard and a purported denial of Equal Protection.  Moreover, Defendants Batista and Kirkegard cannot be held liable based solely on the conduct of their subordinates.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Accordingly, they are entitled to qualified immunity.

Bailey also alleges Warden Kirkegard violated his rights in the supervision of Linda J. Moodry, the interstate compact coordinator, and Blair Hopkins, because they were responsible for delaying Bailey's transfer back to Montana from California.  See, (Doc. 45-1 at 29; Doc. 47 at 2-3.)  All claims relative to Bailey's interstate transfer and purported due process violations, however, have also been dismissed.  Thus, there is no surviving claim based upon Kirkegard's purportedly deficient supervision of Moodry or Hopkins.

### b. Blair Hopkins

As discussed above, Bailey alleged Hopkins, as the Director of the Sex Offender Programming, had discriminated against Bailey by allowing William Hopkins to be placed into treatment before Bailey.  But, as discussed at length above, Bailey and William Hopkins were on two different Phase 2 treatment tracks and placed into two different programs- outpatient and intensive inpatient.  But because Bailey failed to demonstrate that he was deprived of his constitutional right to Equal Protection, he cannot overcome Hopkin's assertion of qualified

22

immunity. *Pearson*, 555 U.S. at 226. (2009).   Accordingly, Hopkins is entitled to qualified immunity.[19]

### c. Sally Odden

Sally Odden is an Administrative Officer for the Montana Department of Corrections' Contract Placement Bureau. (Doc. 45-3 at 2, ¶2.)   Odden collects grievances and transfers them to Contract Placement Bureau Chief, Patrick Smith. *Id.* at ¶4.  The Contract Placement Bureau handled two appeals from Bailey.  The first involved Bailey's attempt to obtain a difference prison cell assignment.  *Id.* at ¶9.  The second involved Bailey's attempt to enter SOP.  *Id.* at 3, ¶12.  Bailey did not assert an Equal Protection violation in either appeal.

Odden does not answer inmate grievances or appeals.  *Id.* at ¶6.  Likewise, Odden has no control over when inmates may enter SOP or when inmates may be seen by the Parole Board.  *Id.* at 3-4.  Odden serves in a purely administrative capacity.

While Bailey alleges that Odden provided him with an incorrect form for one of the grievances, he has failed to demonstrate a causal connection between this purported act by Odden and his asserted Equal Protection violation.

---

[19] To the extent that Bailey now attempts to now argue that Hopkins has refused to take responsibility and provide extra assistance to Bailey in completing Phase 2 of SOP, this argument is not germane to Bailey's single remaining Equal Protection claim based upon disparate racial treatment.  See, (Doc. 45-1 at 29-30.)

Moreover, it appears that Bailey's primary issue with Odden stems from his on-going housing issues.  See e.g., (Doc. 48 at 2) ("Odden may not respond to grievances but she was in [the Administration]…and [they] believed that they can force me to live with and get along with inmates [at CCA] and here at MSP…") But, as explained above, all of Bailey's housing related claims have been dismissed.  Accordingly, Odden also is entitled to qualified immunity.

Based upon the foregoing, the Court issues the following:

## ORDER

1.  Bailey's Motion for Copies/Review (Doc. 41) is DENIED.

2.  Bailey's Motion for Injunction (Doc. 50) is DENIED.

3.  Bailey's Motion for Production (Doc. 53) is DENIED.

## RECOMMENDATIONS

1.   Defendants' Motion for Summary Judgment (Doc. 43) should be GRANTED.  The Clerk of Court should be directed to all close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

2.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[20] 28 U.S.C. § 636. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 21ˢᵗ day of February, 2019.


*/s/ John Johnston*
John Johnston
United States Magistrate Judge

---

[20] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Therefore, since Mr. Bailey is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.